**ENERHAUL, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 82–7298.

United States Court of Appeals, Eleventh Circuit.

July 28, 1983.

Rehearing and Rehearing En Banc Denied Sept. 30, 1983.

\* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama,

Harry L. Hopkins, Peyton Lacy, Jr., Birmingham, Ala., for petitioner.

Elliott Moore, Paul Bateman, N.L.R.B., Washington, D.C., for respondent.

Before KRAVITCH and JOHNSON, Circuit Judges, and LYNNE\*, District Judge.

sitting by designation.

JOHNSON, Circuit Judge:

Ronald Culwell started driving coal truck EH–1 about three weeks after he began working for Enerhaul, Inc. in October 1980. Culwell was the only person to drive EH–1 while he was employed at Enerhaul and from the outset he complained about the truck.[1] Culwell informed his supervisor, Bobby Tucker, that he was having difficulty keeping EH–1 on the road because of a severe darting problem. He complained about faulty steering, about Enerhaul's failure to install mud flaps, about poor maintenance, and about the condition of his truck's frame. Culwell showed the frame to several other Enerhaul truckdrivers who, after examining the truck, asked if Culwell had reported the damage to supervisors. He told the drivers that he had, but that they refused to repair the frame.[2]

Randall Gilmore, the president of Enerhaul, a small family company, was concerned about the amount of repair that Culwell's truck required. The truck's abnormally high number of broken tie bolts indicated that Culwell was abusing the truck—broken tie bolts are usually caused by excessive driving speeds. So Gilmore asked Bobby Tucker to caution Culwell about abusing the truck. Culwell generally exhibited a poor attitude during his employment at Enerhaul. He had threatened to take a fellow driver's truck, he refused to follow shop procedure when getting his truck repaired, and on one occasion he threatened to "whip" the maintenance department's night foreman because of a repair matter. At a December 16, 1980, meeting, Gilmore, Tucker and the company's vice-president decided that Culwell, who was still in his 90-day probationary period, should be terminated. They decided that Culwell was abusing his truck and that he was a "complainer," unhappy with his job. The following day he was terminated.

On February 3, 1981, Culwell filed an unfair labor practice charge, alleging that his discharge violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C.A. § 151, *et seq.* (NLRA), which makes it an unfair labor practice for an employer to interfere with "concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C.A. § 158(a)(1). The charge asserted that Culwell was discharged because of his complaining about unsafe working conditions and claimed that the discharge was unlawfully based on concerted activities "engaged in with other employees." Culwell filed a sworn affidavit with the NLRB General Counsel in support of his charge. According to Culwell's affidavit, the company never responded to his numerous complaints about the safety of his truck. The affidavit states that when he showed EH–1 to several of his co-workers and asked for their opinions about its condition each employee shook his head. Culwell's affidavit asserts that on December 17, after he again complained to Road Manager Tucker about the condition of his truck, he was terminated.

On March 9, 1981, after an investigation of Culwell's charge, the General Counsel issued a complaint against the company alleging that Enerhaul had violated Section 8(a)(1) of the NLRA, 29 U.S.C.A. § 158(a)(1). Enerhaul answered the complaint and the case was tried before an Administrative Law Judge (ALJ) on December 7 and 8, 1981. Culwell was the only employee witness called by the NLRB. Conceding that Culwell acted alone, the Board argued for a finding of actual or constructive concerted activity, a prerequisite to a judgment against Enerhaul.

In his decision the ALJ found that "Culwell was engaged in protected concerted activity by registering his complaints to Respondent," that "Respondent had full

1. In September 1980 EH–1 was wrecked for the second time and repaired. After its first wreck in July 1978 the truck's frame was straightened. A crack subsequently developed in the frame, so in May 1979 the crack was welded and the frame fish-plated. Fish-plating involves sandwiching the cracked frame rail between two steel plates which are bolted and tightened, and the compressed result is a very stable frame.

2. It is undisputed that Enerhaul was unaware of Culwell's conversations with other drivers.

knowledge of the nature of the concerted activity," and that "Culwell's protected, concerted activities (of complaining about job conditions, including those involving safety considerations) were a motivating reason for his discharge," but the ALJ concluded that "Respondent would have discharged Culwell for abusing truck EH-1 even in the absence of Culwell's protected concerted activities." The ALJ therefore dismissed the complaint.

Neither the General Counsel nor petitioner Enerhaul filed exceptions to this decision. Pursuant to Section 10(c) of the NLRA, 29 U.S.C.A. § 160(c), and Section 102.48 of the NLRB Rules and Regulations, the Board adopted the findings and conclusions of the ALJ.[3] Petitioner Enerhaul then filed a petition for fees under the Equal Access to Justice Act, 5 U.S.C.A. § 504; 28 U.S.C.A. § 2412. In a supplemental decision and order the ALJ dismissed the petition, finding that "it is clear from my Decision in the underlying case . . . that the position presented by the General Counsel . . . was 'substantially justified' within the meaning of the EAJA." Enerhaul filed timely exceptions and the General Counsel filed cross-exceptions on procedural grounds. The Board affirmed the decision of the ALJ, dismissing Enerhaul's petition because it found that "the position of the General Counsel was reasonable in law and fact." This appeal followed.

■ In 5 U.S.C.A. § 504(a)(1) the EAJA provides that:

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency as a party to the proceeding was substantially justified or that special circumstances make an award unjust.

**3.** In the event that no exceptions are filed as provided in Sections 102.46 and 102.154 of the NLRB Rules and Regulations, all objections to

Federal court review of an agency's fee determination is very limited. The court "may modify the determination only if it finds that the failure to make an award . . . was an abuse of discretion." 5 U.S.C.A. § 504(c)(2).

■ The burden of proving that a fee award should not be made rests with the government. "The test of whether the Government position is substantially justified is essentially one of reasonableness in law and fact." H.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 22 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 5003, 5011. In its motion to dismiss Enerhaul's petition for fees, the NLRB pointed out that the ALJ had found that Culwell engaged in protected concerted activity, that Enerhaul had knowledge of Culwell's protected activity, and that such activity was a motivating reason for his discharge. General Counsel asserted that it is therefore clear that the NLRB's position was "substantially justified."

Both the ALJ and the Board found that the General Counsel had sustained his burden of proving substantial justification for the agency's position. The Board stated that:

> In particular, we note the Administrative Law Judge's finding in his original Decision that the General Counsel established a *prima facie* violation of the Act—a finding to which no party excepted.[3] We therefore agree with the Administrative Law Judge's finding that the General Counsel's position was substantially justified within the meaning of the EAJA. Consequently, the Applicant's application shall be dismissed.

[3] We do not, however, suggest that a finding that the Counsel established a *prima facie* case is a prerequisite to finding the General Counsel's position reasonable in law and fact. We shall continue to analyze EAJA applications on a case-by-case basis.

Chairman Van de Water recognizes that the General Counsel is bound to issue a complaint consistent with Board prece-

the findings, conclusions and order of the ALJ are deemed to have been waived. Section 102.-46(b).

dent contemporaneous with his consideration of the case, and Chairman Van de Water therefore agrees with the finding herein that the General Counsel's position was reasonable in law and fact. But he does not intend to imply that, were he deciding the merits of this case, he would agree (on the basis of the facts herein) that the employee.engaged in "concerted activity."

Enerhaul argues that there was no substantial justification in law or fact for the General Counsel's position because Culwell's individual action, although arguably a safety complaint, did not present a case of protected "concerted activity." As authority for this proposition, Enerhaul cites the case of *Comet Fast Freight,* 262 NLRB No. 40 (1982), which held, on similar facts, that an individual truckdriver's complaints about the safety of his truck, which did not involve a matter of concern to other employees, did not constitute concerted activity within the meaning of the NLRA. But *Comet* was decided after the General Counsel issued his complaint against Enerhaul. Before *Comet* was decided there was still a possibility that the Board would find that Culwell engaged in concerted activity. *See Comet,* 1981–82 CCH NLRB ¶ 19,090 at 30,-983–84 (Member Jenkins, dissenting). Such was not the case, however, in this Circuit,[4] which has jurisdiction over enforcement and review proceedings stemming from the unfair labor practice charge filed against Enerhaul. Several decisions of the Fifth Circuit have squarely held that "individual griping and complaining are not protected concerted activity." *NLRB v. Charles H. McCauley Associates,* 657 F.2d 685, 688 (5th Cir.1981); *NLRB v. Datapoint Corp.,* 642 F.2d 123, 128–29 (5th Cir.1981); *NLRB v. Buddies Supermarkets, Inc.,* 481 F.2d 714, 717–19 (5th Cir.1973). "[I]t must appear at the very least that it was engaged in with the object of initiating or inducing or preparing for group action or that it had some

relation to group action in the interests of the employees." *Buddies Supermarkets,* 481 F.2d at 718. Our examination of the record reveals no basis in law or fact for a finding of concerted activity. There is no indication that Culwell was attempting to initiate group action, and there is no evidence that he was discharged for such a reason.

Because the NLRB's position in this case was unreasonable under the law of this Circuit, we hold that the ALJ and the Board abused their discretion by dismissing Enerhaul's petition on the merits.[5] This case is distinguishable from *Wyandotte Savings Bank v. NLRB,* 682 F.2d 119 (6th Cir.1982), in which the Sixth Circuit stated that "the mere fact that the NLRB was the losing party or the fact that the NLRB's position was contrary to prior Sixth Circuit precedent does not mean that the Board was not substantially justified in seeking enforcement of its order." *Id.* at 120. In that case there was some support in the Circuit's caselaw for the position taken by the NLRB. In this case, there is none.

Congress indicated that a fee award would be inappropriate under EAJA when the government is "advancing in good faith a novel but credible extension and interpretation of the law." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4990. We do not think that Congress thereby intended to sanction the NLRB's reliance on a legal theory that has been clearly and repeatedly rejected by this Court.

REVERSED.

---

4. The Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent on this Court unless and until overruled or modified by this Court en banc. *Bon-*

*ner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

5. Procedural objections raised by the General Counsel were not addressed below.