**CHARTER MANAGEMENT, INC., and Ten Four, Inc., Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 84–8764.

United States Court of Appeals, Eleventh Circuit.

Aug. 16, 1985.

Richard L. Wyatt, John E. Thompson, Atlanta, Ga., for petitioners.

Margery E. Lieber, Eric G. Moskowitz, Susan T. Papadopoulos, N.L.R.B., Washington, D.C., for respondent.

Before RONEY and HILL, Circuit Judges, and PITTMAN *, District Judge.

PITTMAN, District Judge:

Charter Management, Incorporated, and Ten Four, Incorporated, appeal from the National Labor Relations Board's (NLRB) denial of their application for an award of attorney's fees. The NLRB adopted the conclusion of the administrative law judge (ALJ), who held that the appellants were not entitled to an award of fees under the Equal Access to Justice Act (E.A.J.A.), 5 U.S.C. § 504(a)(1) (1982), because the position of the NLRB's General Counsel was substantially justified. This court holds that the NLRB did not abuse its discretion and affirms its ruling.

In December, 1982, an audit of a combination store and truck stop owned by appellants Charter Management, Incorporated, and Ten Four, Incorporated, (hereinafter referred to collectively as Charter), re-vealed shortages in inventory. Charter thus arranged for all its store employees to take a polygraph examination. It assured them that the purpose of the examination was to trace the disappearance of large amounts of merchandise. It told them that they would not be discharged unless they were responsible for the theft of substantial amounts of cash or merchandise. During the polygraph examinations, all employees admitted taking various amounts of merchandise, cash, or both. Charter decided to replace these employees, so on January 14, 1983, it began running newspaper advertisements and conducting interviews.

On January 25, 1983, several employees and three representatives of a labor organization confronted the store's supervisor, Leonard Smith, and demanded recognition as the employees' bargaining agent. Smith took no action to determine the validity of the bargaining demand but met that afternoon with corporate vice president David Evans and Charter's labor counsel. Counsel advised them to proceed with the employee terminations as they would have done had no union been in the picture. Thus, after securing replacements, Charter terminated the employees in late January.

Thereafter, Retail Clerks Local 1063 filed charges against Charter with the Regional Office of the NLRB. The charges alleged that Charter had violated the National Labor Relations Act (N.L.R.A.), 29 U.S.C. § 158 (1981), by: (1) unlawfully interrogating an employee about the employee's union activity; (2) threatening to discharge an employee because of the employee's support for the union; (3) discharging twelve employees because of their union organizing activities; and (4) refusing to recognize and bargain with a union. The Board's Regional Office proceeded to investigate these alleged unfair labor practices. It took detailed affidavits from the discharged employees and their witnesses. It advised Charter that, to avoid the issuance of a complaint, Charter had to present evi-

---

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

dence to show a lawful reason for the discharges. Charter submitted a lengthy statement along with the affidavits of Mr. Evans and Mr. Smith. Supplemental affidavits followed, and Mr. Smith submitted to an interview. In its statement, Charter raised its defenses that no anti-union motive had been shown, that no prima facie case of unlawful discharge existed, and that the terminations would have occurred even in the absence of protected union activities. Following this investigation, the Board's General Counsel issued a complaint and amended complaint pursuant to the above charges of unfair labor practices.

A hearing on the allegations in the complaint was held before an ALJ. Following a four-day hearing involving conflicting testimony and credibility decisions, the ALJ found that Charter did not violate the N.L.R.A., and he dismissed the complaint. On the charge of unlawfully interrogating an employee about her union activity, the ALJ credited the testimony of Mr. Smith over that of the employee to find that Mr. Smith made a legitimate inquiry into whether the employee left her duty station. Similarly, on the charge of threatening to discharge an employee because of the employee's union activity, the ALJ credited Mr. Smith's denial of making the threat over the employee's accusations. The ALJ held that the discharge of employees also was not unlawful because the General Counsel failed to show that it was motivated by union animus. Even if the General Counsel had established a prima facie case on this issue, the ALJ said, Charter presented ample evidence that the discharge would have occurred absent the union activity. On the basis of these findings, the ALJ found that Charter's refusal to recognize the union also did not violate the N.L.R.A. No exceptions were filed to the ALJ's decision, and the NLRB adopted it.

Charter then filed an application for an award of attorney's fees and expenses pursuant to the E.A.J.A., 5 U.S.C. § 504(a)(1). The ALJ found in a Supplemental Decision and Order that the General Counsel "was substantially justified in issuing a complaint and litigating the case to conclu-

sion." He noted that the case required resolution of several credibility issues and the determination of these issues was made only after a four-day hearing with numerous witnesses and conflicting testimony. The ALJ thus denied Charter's application for fees. Charter filed exceptions to this ruling, but the NLRB affirmed it. Charter was granted leave to appeal to this court.

■■■■ The portion of the E.A.J.A. under which Charter seeks an award of attorney's fees provides:

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency as a party to the proceeding was substantially justified or that special circumstances make an award unjust.

5 U.S.C. § 504(a)(1). At the administrative level, the burden is on the agency to prove that a fee award should not be made under this provision. *Enerhaul, Inc. v. NLRB,* 710 F.2d 748, 750 (11th Cir.1983). A federal court's review of an agency's denial of a fee application, however, is limited. "The court 'may modify the [agency's] determination only if it finds that the failure to make an award ... was an abuse of discretion.'" *Id.* (quoting 5 U.S.C. § 504(c)(2)).

Charter initially contends that the entire course of an agency's conduct should be scrutinized in determining whether "the position of the agency as a party to the proceeding was substantially justified." 5 U.S.C. § 504(a)(1). The inquiry, Charter argues, should not be limited to the agency's "litigation position" but should include the agency's actions which led to the adversary proceeding. *See Iowa Express Distribution, Inc. v. NLRB,* 739 F.2d 1305 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 595, 83 L.Ed.2d 704 (1985); *but see Ashburn v. United States,* 740 F.2d 843, 847 n. 4 (11th Cir.1984); *Spencer v. NLRB,* 712 F.2d 539 (D.C.Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d

457 (1984) (construing 28 U.S.C. § 2412). This court, however, need not address this issue in this case, because it will not affect the outcome of the case. Although the position taken by an agency prior to the institution of formal proceedings may differ in some cases from the agency's position at a subsequent adjudicatory hearing, no such difference exists here. In this case, the General Counsel's litigation position largely was an orderly presentation of its prelitigation findings. Any shortcomings in the agency's prelitigation conduct would manifest themselves in the agency's litigation position, keeping it from being substantially justified. In this case, therefore, the actions of the General Counsel prior to the issuance of a complaint need not be independently examined.[1]

Charter next contends that the NLRB abused its discretion by finding that the General Counsel's position was substantially justified and thus denying an award of fees. For its position to be substantially justified, Charter argues, the General Counsel must present evidence which, if credited by the factfinder, would constitute a prima facie case of unlawful conduct. Even the existence of a prima facie case is not grounds for the issuance of a complaint, Charter continues, if it is clear that a known defense will overwhelm the prima facie case. The mere existence of certain credibility questions, Charter argues, also is insufficient to warrant the issuance of a complaint or a finding that the General Counsel's position was substantially justified. It contends that the General Counsel has an obligation—which it did not meet in this case—to make all possible credibility determinations prior to issuing a complaint. Application of these standards to this case, Charter concludes, requires a finding that the General Counsel's position was not substantially justified.

This court disagrees and holds that the NLRB's denial of Charter's application for fees was not an abuse of discretion. The first two charges in the amended complaint—the alleged unlawful interrogation and the alleged threats of termination—hinged on resolving the credibility of conflicting testimony. One employee testified that her supervisor made various inquiries into her involvement with the union. Considering these inquiries under the totality of the circumstances, the General Counsel was not unjustified in believing that these questions were coercive within the meaning of § 8(a)(1) of the N.L.R.A., 29 U.S.C. § 158(a)(1) (1982). *See TRW-United Greenfield Division v. NLRB,* 637 F.2d 410, 416 (5th Cir.1981). The ALJ found that the inquiries did not constitute a violation only because he credited Mr. Smith's version of the incident over the employee's. On the basis of Mr. Smith's testimony, the ALJ found that the inquiries were not unlawful because they were made legitimately to determine whether the employee left her duty station. Likewise, the ALJ credited Mr. Smith's testimony over the directly conflicting testimony of another employee to find that Mr. Smith did not threaten to discharge the employee because of his union activity. The ALJ stated in his Supplemental Decision and Order that he would have found a violation on both of these charges had he credited the testimony of the employees. The fact that the ALJ decided that Mr. Smith was more credible than the employees does not mean necessarily that the General Counsel was wrong to issue a complaint on the basis of the employees' statements. Thus, the NLRB did not abuse its discretion in holding that the General Counsel's position on these charges was substantially justified.

The same is true for the charges of wrongful termination and refusal to bargain. The central issue in the wrongful

---

**1.** There is strong authority in *Ashburn v. United States,* 740 F.2d 843, 847 n. 4 (11th Cir.1984), to suggest that the inquiry is always limited to the agency's litigation position. Charter argues that this authority is dicta and that the issue at any rate must be reconsidered in light of Congress' recent unsuccessful attempts to amend the E.A.J.A. For the reasons discussed, this court need not address these arguments.

termination charges was whether Charter's mass discharge of employees was motivated by anti-union considerations. Since employers seldom admit anti-union motivation, the General Counsel did not act unreasonably in refusing to accept Charter's statements at face value. Further, despite the ALJ's holding, there was evidence that union activity—rather than the alleged thefts—was the reason for the terminations. Some of the discharged employees, for example, said they took only small food and beverage items which they previously had been allowed to take. Those same employees were assured that the purpose of the polygraph examination was to trace the disappearance of substantial amounts of merchandise—not small items. The terminations also did not immediately follow the examinations; they were delayed several weeks and ultimately occurred almost immediately after the union's request for recognition. These facts and the employees' testimony concerning the alleged unlawful interrogation and threat could lead a factfinder to believe that Charter discharged the employees because of their union activity. Further, it was only after finding that Charter was not guilty of the first three alleged violations that the ALJ concluded that Charter had a good faith, lawful basis on which to refuse to recognize and bargain with the union.

The fact that the ALJ believed Charter's witnesses and decided in Charter's favor does not mean that the General Counsel was not substantially justified in issuing a complaint and litigating the case. The conflicting statements and the circumstances of the discharge of the employees justified counsel's desire to see and hear live witnesses subjected to direct and cross-examination to make necessary credibility determinations. The decision of the NLRB that the General Counsel's position was substantially justified and that attorney's fees should not be awarded was not an abuse of discretion. Its ruling is therefore AFFIRMED.