Clay LACY

v.

The UNITED STATES.

No. 490–78.

United States Court of Claims.

Oct. 17, 1979.

Arnold L. Ross, Beverley Hills, Cal., for plaintiff; Ross, Fields & Zax, Beverly Hills, Cal., of counsel.

Richard J. Webber, with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant; Dennis J. Cronin, Dept. of Treasury, Washington, D. C., of counsel.

Before KASHIWA, KUNZIG and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

Plaintiff in this case claims he is entitled to an informer's award of $50,000 pursuant to 19 U.S.C. § 1619 (1976)[1] for information he provided which contributed to the location and seizure of a Lear jet aircraft used to export arms from the United States illegally. Defendant has now moved for summary judgment arguing the information that plaintiff provided was not "original" information as required by the statute.

For the reasons stated below, we find there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law.

The facts are as follows. On April 16, 1974, Senior Special Agent Joseph Charles of the United States Customs Service learned that Thomas Richardson, an associate of Robert Vesco, had purchased 14 firearms which were on the Federal Munitions control list from a sporting goods store in Los Angeles, California. Between April 26, 1974 and May 7, 1974, the Federal Bureau of Investigation (FBI) received information that a Lear jet owned by Richardson, identified as N–33–TR, had been loaded with arms and ammunition on April 19, 1974, at Van Nuys Airport, California, and flown out of the United States, to either Costa Rica or Nassau. Three fuelers who assisted in loading the aircraft on the morning of April 19, 1974, Bernard Wilson, Jerry Scinto, and Dennis Brown, were the individuals who provided this information to the FBI, which was recorded in the form of an FBI memorandum.

It was not until July 2, 1974, that the FBI's memorandum was received by Special Agent Charles of the Customs Service. On July 3, 1974, Charles personally interviewed Scinto and Wilson at Van Nuys Airport, obtaining information which tended to confirm the FBI memorandum.

The FBI memorandum was also furnished to Philip R. Manuel, an investigator with the Permanent Subcommittee on In-

1. 19 U.S.C. § 1619 (1976) reads:

Any person not an officer of the United States who detects and seizes any vessel, vehicle, merchandise, or baggage subject to seizure and forfeiture under the customs laws or the navigation laws, and who reports the same to an officer of the customs, or who furnishes to a United States attorney, to the Secretary of the Treasury, or to any customs officer original information concerning any fraud upon the customs revenue, or a violation of the customs laws or the navigation laws, perpetrated or contemplated, which detection and seizure or information leads to a recovery of any duties withheld, or of any fine, penalty, or forfeiture incurred, may be awarded and paid by the Secretary of the Treasury a compensation of 25 per centum of the net amount recovered, but not to exceed $50,000 in any case, which shall be paid out of any appropriations available for the collection of the revenue from customs. For the purposes of this section an amount recovered under a bail bond shall be deemed a recovery of a fine incurred. If any vessel, vehicle, merchandise, or baggage is forfeited to the United States, and is thereafter, in lieu of sale, destroyed under the customs or navigation laws or delivered to any governmental agency for official use, compensation of 25 per centum of the appraised value thereof may be awarded and paid by the Secretary of the Treasury under the provisions of this section, but not to exceed $50,000 in any case.

vestigations, United States Senate. During 1974, Manuel was assigned to conduct an investigation of certain activities of Vesco and Richardson. As part of his investigation, Manuel interviewed plaintiff Lacy on August 2, 1974 at Van Nuys Airport. Plaintiff was then helping to modify Richardson's jet and had made arrangements to have certain new equipment installed on the aircraft. Manuel asked plaintiff to divulge the jet's location. Plaintiff was willing to reveal the location provided he could be assured payment for the modifications would be made to the contractor actually performing the work, for if the aircraft were to be seized before payment to the contractor, plaintiff himself would be responsible for payment of the modifications. On August 3, 1974, Manuel gave the information he had obtained from plaintiff concerning the jet's location to customs personnel. Shortly thereafter, Richardson paid for the completed modifications on the aircraft; Manuel was informed of the payment, clearing the way for seizure of the jet by defendant on August 21, 1974, at the location disclosed by plaintiff.

In December 1974 and January 1975, Wilson, Scinto, and Brown filed claims for informers' awards under 19 U.S.C. § 1619 (1976) on the basis of the information they provided leading to the seizure of the Lear jet. When the claims were administratively denied, the three informants filed suit in this court in July 1976. On July 8, 1977, this court entered judgment based on a stipulation of settlement in which the United States agreed to pay Scinto and Wilson each $20,000, and Brown $10,000. *Scinto v. United States*, 566 F.2d 1189, Ct.Cl. No. 302–76 (Unreported Order of July 8, 1977). Plaintiff did not participate in this suit.

■ Now plaintiff has brought a separate suit filed November 13, 1978, alleging he too is entitled to an informer's award of $50,000 under the same set of facts. Plaintiff insists the information he gave Manuel on August 2, 1974, specifying the Lear jet's location was the key information leading to its seizure on August 21, 1974. Defendant contends, and we agree, that the central question is whether plaintiff provided "original information concerning . . . a violation of the customs laws or the navigation laws, perpetrated or contemplated. * * * " 19 U.S.C. § 1619 (1976).

As noted in *Tyson v. United States*, 32 F.Supp. 135, 136, 91 Ct.Cl. 139, 141 (1940), "If the information furnished was not the *first* information which the Secretary of the Treasury had had concerning the fraud or violation, the informer was not entitled to the fee." (emphasis added). The violation of law at issue is the illegal export of arms by Richardson in his jet aircraft.[2] *The FBI possessed information concerning this violation as early as April 26, 1974.* Although the Customs Service had not conclusively established that a violation of law had occurred—by July 3, 1974, Joseph Charles, the Customs Service Special Agent, had "developed my investigation to a point at which I suspected Richardson of illegally exporting or being in the process of illegally exporting those firearms to a foreign country." It was not until August 3, 1974, that plaintiff provided the information he claims entitles him to a reward. Obviously, by this time the investigation of Richardson's arms export was well underway. However helpful plaintiff's location of the aircraft may have been, it was not the original information leading to investigation and ultimately the forfeiture of the aircraft; thus the reward is not his, *see Tyson, supra.*

---

**2.** Technically, the information concerning arms export in this case was not information concerning a violation of the *customs laws* because the provisions prohibiting such export are contained in Title 22, Foreign Relations and Intercourse, sections 401 and 2778 ("arms export sections") while the *customs laws* are contained primarily in Title 19, Customs Duties. However, 22 U.S.C. § 401(b) of the arms export sections provides that the provisions of law relating to the award of compensation to informers of customs law violations will apply also to violations of the arms export sections. Consequently, an informer providing information concerning a violation of the arms export sections will be eligible for an award as if the information concerned a violation of the customs laws within the meaning of 19 U.S.C. § 1619.

Particular analysis of the facts also demonstrates how an award to plaintiff would run contrary to the intent of the statute and its requirement that information be "original." For if plaintiff could claim a reward, so might a mechanic at the airport where the jet was seized, if the mechanic had directed customs officials to the specific hangar where Richardson's jet was garaged.[3] By use of the term "original," Congress meant to preclude successive rewards from being doled out after an investigation had been initiated and thereby discourage informers from giving out information on a piecemeal basis, *see Cornman v. United States*, 409 F.2d 230, 234, 187 Ct.Cl. 486, 494, *cert. denied*, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 424 (1969). Plaintiff in this case is not entitled to a reward. Having decided the issue on the merits, we find it unnecessary to reach the laches question raised by defendant.

Accordingly, after consideration of all the submissions of the parties, but without oral argument, defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.

---

**3.** Plaintiff herein alleges that on August 2, 1974, he provided other details relating to the exportation of arms as well as specifying the jet's location. It is obvious from the above why these "other details" were not "original" information. Moreover, it is far from clear whether revealing nothing more than the jet's location would constitute information concerning a violation of law within the meaning of the compensation to informers statute.