Robert **RICKARD**

v.

The **UNITED STATES.**

No. 13–85C.

United States Claims Court.

March 16, 1987.

Jack B. Solerwitz, Mineola, N.Y., attorney of record for plaintiff.

George M. Beasley, III, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard. Sandra Strempel, U.S. Customs Service, of counsel.

## OPINION

YOCK, Judge.

This case is before the Court on cross-motions for summary judgment. For the reasons discussed herein, defendant's motion for summary judgment is denied, and plaintiff's cross-motion for summary judgment is allowed in part as it relates to the jurisdiction of this Court. The remainder of plaintiff's cross-motion for summary judgment on the merits is denied, however, because the Court concludes that genuine issues of material facts exist.

### Facts

The plaintiff, Mr. Robert Rickard, seeks an award of compensation to informants (otherwise known as moieties), pursuant to statutory authority contained in 19 U.S.C. § 1619 (1976). In his complaint before this Court, Mr. Rickard alleges that he provided the United States Government with original information that led to the arrest of individuals involved in smuggling illicit drugs into the United States. In addition to the arrest and conviction of individuals on criminal charges, the plaintiff also alleges that his original information led to the seizures and forfeitures of contraband (drugs) and the vessels that were used in the illegal smuggling activity in contravention of U.S. Customs laws.

On December 23, 1980, the plaintiff filed notice of claims/applications for moieties pursuant to 19 U.S.C. § 1619 (1976) with the Secretary of the Treasury with copies of the claims to the Attorney General of the United States, the Drug Enforcement Administration (DEA), and the United States Customs Service. By letter dated January 7, 1983, and signed by Mr. R. Dos Santos, Director, Regional Patrol Division of the United States Customs Service, New York, New York, the plaintiff's claims were denied. The letter indicated that the information provided by the plaintiff was not "original," but that in any event any claim based on furnishing information in drug related cases would be governed by the Controlled Substances Act, 21 U.S.C. § 881(d) (1976), and any such claim determinations would be made by the Drug Enforcement Agency (DEA).

After Mr. Rickard enlisted the aid of United States Senator Alfonse D'Amato of New York, the Customs Service reversed its prior decision and by letter dated March 27, 1984, advised the plaintiff in pertinent part:

> A final determination has been made to award you a total of $25,000. You have previously received $10,000 and the additional $15,000 is available. Your signature is required on Customs Form 293 titled Purchase of Information/Evidence Transaction Receipt. The form reflects that the payment in [sic] being made for information and testimony that resulted in arrests, convictions and seizures of narcotics and vessel.

The letter was signed by Mr. Patrick T. O'Brien, Assistant Regional Commissioner (Enforcement), U.S. Customs Service, in New York.

Plaintiff refused to accept the $15,000 as final payment on the award and filed this action on January 10, 1985.

## Discussion

Defendant has filed a motion for summary judgment on the basis that this Court lacks jurisdiction to hear plaintiff's claims. In the alternative, defendant contends that the decision denying plaintiff's claims should be affirmed on the merits because it was neither arbitrary nor capricious and was supported by evidence.

Plaintiff has filed a cross-motion for summary judgment contending that this Court does have jurisdiction over this matter, and requesting judgment in his favor on the merits as to liability, although he concedes that a trial is necessary to establish the appropriate amount of damages.

### A. Jurisdiction

In order to invoke the jurisdiction of this Court, plaintiff must base his claim "either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (1982). In this action, plaintiff bases his substantive right to compensation on a statute, *i.e.*, 19 U.S.C. § 1619 (1976). Plaintiff claims that section 1619, which authorizes the award of compensation to informers, is money-mandating and, therefore, capable of invoking the jurisdiction of this Court. *See United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002 (1967).

█ Both parties agree that the test of whether a statute establishes a substantive right to compensation (and thus jurisdiction) in this Court is whether the statute is mandatory or permissive. *United States v. Testan, supra.* If the language and effect of the statute is mandatory, there is jurisdiction in this Court to hear a case based on that money-mandating statute. If, on the other hand, the language of the statute is permissive in scope and effect, the statute does not grant jurisdiction to hear the case in this Court. *Eastport S.S. Corp., supra,* 178 Ct.Cl. at 607, 372 F.2d at 1008.

Section 1619 of Title 19 reads in pertinent part:

Any person not an officer of the United States who * * * furnishes to a United States attorney, to the Secretary of the Treasury, or to any customs officer original information concerning any fraud upon the customs revenue, or a violation of the customs laws of the navigation laws, perpetrated or contemplated, which detection and seizure or information leads to a recovery of any duties withheld, or of any fine, penalty, or forfeiture incurred, *may be awarded* and paid by the Secretary of the Treasury a compensation of 25 per centum of the net amount recovered, but not to exceed $50,000 in any case, which shall be paid out of any appropriations available for the collection of the revenue from customs. For the purposes of this section an amount recovered under a bail bond shall be deemed a recovery of a fine incurred. If any vessel, vehicle, merchandise, or baggage is forfeited to the United States, and is thereafter, in lieu of sale, destroyed under the customs or navigation laws or delivered to any governmental agency for official use, compensation of 25 per centum of the appraised value thereof may be awarded and paid by the Secretary of the Treasury under the provisions of this section, but not to exceed $50,000 in any case. [Emphasis supplied.]

In arguing against jurisdiction in this Court, the defendant basically argues three points. First, it argues that the language of the statute itself is permissive in nature. It points out that Congress chose to use the permissive words "may be awarded" rather than the clearly mandatory words "shall be awarded." This use of words was intended, the Government contends, because Congress clearly wanted the Secretary of the Treasury (or his delegee) to determine in the first instance, who supplied the original information that brought about the seizures and recoveries, and whether that "informer" should be awarded monetary compensation as a matter of public policy. In short, the defendant's first argument is

premised on the contention that the language of the statute itself clearly established that the Congress intended to confer complete discretion on the Secretary of the Treasury (or his delegee), an executive officer, and did not wish to subject his administrative decisions to judicial second-guessing in Tucker Act litigation.

The defendant's second point is that numerous other permissive statutes similar to the statute here at issue have been held by this Court (and its predecessor court) not to grant jurisdiction in this Court. The defendant points to the civil service incentive award program contained in 5 U.S.C. § 4503 (1982) which provided that "the head of an agency may pay a cash award to * * * an employee who * * * by his suggestion, invention, superior accomplishment, or other personal effort contributes to the efficiency, economy, or other improvement of Government operations * *." The Government states that this Court in *McGee v. United States*, 5 Cl.Ct. 480 (1984), denied plaintiff's incentive award claim on the grounds that plaintiff's painting suggestion was not officially adopted, but contends that it intimated that jurisdiction would have been lacking even if plaintiff's suggestion had been used by the Navy, because of the permissive nature of the language used in the statute. Likewise, in *Adair v. United States*, 227 Ct.Cl. 345, 648 F.2d 1318 (1981), the Court of Claims denied jurisdiction over the plaintiff's claim for variable incentive pay under 37 U.S.C. § 313 (1976). That statute provided that "medical officers who execute active duty agreements under conditions set by the Secretary of Defense (DOD) or Secretary of Health, Education, and Welfare (HEW) * * * may, upon acceptance of the written agreement by the Secretary concerned, be paid an amount not to exceed $13,500 for each year of the active duty agreement." The court denied jurisdiction on the ground that the statute was a discretionary mechanism by which the Secretaries of DOD and HEW could offer pecuniary bonuses in recruiting physicians for various Government positions. Similarly, in *Doe v. United States*, 224 Ct.Cl. 632, 650 F.2d 287 (1980),

the Court of Claims denied jurisdiction over a claim based on an alleged express oral contract to provide plaintiffs with certain benefits pursuant to the Witness Protection Program of the Department of Justice under the Organized Crime Control Act of 1970, Pub.L. No. 91–452, title V, §§ 501–04, 84 Stat. 933 (1970) and pursuant to 28 U.S.C. § 524 (1976). The court stated that under the permissive provisions of the statute, the admission of persons to the Witness Protection Program is reserved to the discretion of the Attorney General, as is the compensation paid to such persons. Since the statute did not command the payment of money, the court held that it lacked jurisdiction to hear the case. The Government thus argues that the decision regarding jurisdiction in this case should be decided in the same way as those other directly analogous cases, *i.e.*, that the Court does not have jurisdiction because of the permissive nature of the language contained in the statute.

The defendant's third and final point acknowledges that there is case law directly on point and contrary to the defendant's argued position on jurisdiction, but argues that such case law either was decided prior to the Supreme Court's decision in *Testan, supra*, and is thus incompatible, or failed to adequately address the jurisdictional argument that is urged on the Court in this case.

The problem with the defendant's three arguments on jurisdiction, however, comes down to this Court's basic disagreement with the defendant's third and final point. There is established and consistent case law that requires this Court to find jurisdiction when a plaintiff bases his claim in this Court squarely on section 1619 of title 19. *See Allen v. United States*, 229 Ct.Cl. 515 (1981); *Lacy v. United States*, 221 Ct.Cl. 526, 607 F.2d 951 (1979); *Tyson v. United States*, 91 Ct.Cl. 139, 32 F.Supp. 135 (1940). The Court of Appeals for the Federal Circuit has affirmed that this Court is to be bound by precedents indicated by its predecessor courts. *See South Corp. v. United States*, 690 F.2d 1368 (Fed.Cir.1982), Gener-

al Order No. 1, 1 Cl.Ct. preceding Rule 1 (1982). *See also South Louisiana Grain Services v. United States,* 1 Cl.Ct. 281, 287 (1982); *Cheyenne-Arapaho Tribes of Indians v. United States,* 1 Cl.Ct. 290, 292 (1982). Although the Government has presented consistent and well thought out arguments in support of its position on jurisdiction, this Court is simply not free to write on a clean slate.

In *Tyson v. United States, supra,* 91 Ct.Cl. at 141–42, 32 F.Supp. at 136, the Court of Claims, pre-*Testan,* determined that:

> The defendant says that the Secretary's action in refusing to pay the award is final and conclusive, and that this court has no jurisdiction to review it. We do not altogether agree. Under certain circumstances and to a certain extent we think his action may be reviewed by the courts. Congress did not intend to leave to the caprice or whim of the Secretary an informer's right to the award. It intended to confer upon the informer an absolute right to demand the payment of the award when he had met the conditions precedent thereto laid down by Congress; that is to say, when he had furnished information of a fraud on the revenue, or a violation of the customs law, and when that information was "original" information thereof, and when that information led to the recovery of duties or of a fine, penalty, or forfeiture. If the information furnished was not the first information which the Secretary of the Treasury had had concerning the fraud or violation, the informer was not entitled to the fee. If the information furnished did not lead to a recovery of duties, or of any fine, penalty, or forfeiture, the informer was not entitled to a fee. But when the information was the first information which the Secretary had had, and when that information led to the recovery of duties, or of a fine, penalty, or forfeiture, then the informer was entitled as of right to the payment of the award, and if the Secretary of the Treasury arbitrarily or capriciously refused to pay it, the informer had the right to

file suit in court to compel that payment. [Citations omitted.]

Later, in a post-*Testan* case, the Court of Claims in *Lacy v. United States, supra,* assumed jurisdiction over an informer's award claim based on 19 U.S.C. § 1619 (1976) and its prior precedent enunciated in *Tyson.* The Court found for the Government on the merits of the claim since the information furnished to the Government was not original information.

Also, in a post-*Testan* case, the Court of Claims in *Allen v. United States, supra,* 220 Ct.Cl. at 519, held the following:

> Where the United States does not sell the forfeited item, "compensation of 25 per centum of the appraised value * * * may be awarded * * * under the provisions of [19 U.S.C. § 1619] but not to exceed $50,-000 in any case." Based solely on the use of "may," it might be argued that this statute, like 21 U.S.C. § 886(a), is wholly discretionary and founds no claim within our jurisdiction. The Government does not make such an argument, no doubt based on this court's decision in *Tyson v. United States,* 91 Ct.Cl. 139, 32 F.Supp. 135 (1940), and its progeny. In *Tyson,* we concluded that an essentially similar predecessor statute allowed an informer an absolute right to compensation once the requirements of the section were met. Other federal appeallate [sic] courts have reached a similar conclusion as to present-day 19 U.S.C. § 1619 or its predecessors. *E.g., Taylor v. United States,* 550 F.2d 983 (4th Cir.1977); *Wilson v. United States,* 135 F.2d 1005 (3d Cir.1943). A claim under 19 U.S.C. § 1619 is within our jurisdiction.

■ In view of the above discussion, the defendant's motion for summary judgment as it relates to the issue of jurisdiction in this Court over claims based on 19 U.S.C. § 1619 is denied, and the plaintiff's cross-motion for summary judgment on jurisdiction is granted.

### B. Claim on the Merits

A motion for summary judgment on the merits of a claim shall be granted if:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.*

RUSCC 56(c) (emphasis added).

As a general rule, caution must be exercised when deciding a motion for summary judgment. The Court of Appeals for the Federal Circuit has held that:

> Though speedy and inexpensive, summary judgment is nonetheless a "lethal weapon" capable of "overkill." *Brunswick v. Vineburg,* 370 F.2d 605, 612 (5th Cir.1967). *See generally,* Louis, *Federal Summary Judgment Doctrine: A Critical Analysis,* 83 Yale L.Rev. 745 (1974). It denies the non-movant its "day", i.e. a trial, in court. Moreover, experience has shown that a trial often establishes facts and inferences not gleanable from papers submitted pre-trial.

*SRI International v. Matsushita Elec. Corp. of America,* 775 F.2d 1107, 1116 (Fed.Cir.1985).

At this point, neither party has met its burden of proving an absence of genuine issues as to the material facts in this case. The Government has not presented a coherent "story" as to why it offered the plaintiff $25,000 for this information and at the same time denied that the "information" was original. Likewise, the plaintiff's proposed facts and legal theories need fleshing out. In short, there are too many unanswered questions for the Court to decide this case at this juncture. As Judge Nichols of the Federal Circuit likes to state, this case could benefit from further ventilation at trial. Summary judgement as to the merits of this controversy is simply inappropriate at this time.

### CONCLUSION

In view of the above discussion, the plaintiff's cross-motion for summary judgment is allowed in part, as it relates to the jurisdiction of this Court. Plaintiff's cross-motion on the merits of this controversy is denied. Defendant's motion for summary judgment is denied in its entirety.