**WHITE & CASE LLP, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–2800C.

United States Court of Federal Claims.

Aug. 1, 2005.

Caleb W. Sullivan, White & Case, Miami, Florida, for plaintiff. Lucius B. Lau, White & Case, Washington, D.C. and James N. Robinson, White & Case, Miami, Florida, of counsel.

Michael S. DuFault, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Patricia M. McCarthy, Assistant Director, all of Washington, D.C., for defendant.

### *OPINION AND ORDER*

WOLSKI, Judge.

The plaintiff, White & Case LLP, filed a complaint in this Court asserting that it is entitled to an informant's award, pursuant to 19 U.S.C § 1619, for original information it provided defendant United States ("Government") regarding the importation of brake rotors from China in violation of the customs laws. The Government has moved to dismiss the complaint under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). Specifically, the Government argues that the plaintiff has failed to exhaust administrative remedies and that the plaintiff's complaint is not yet ripe for this Court's review. For the reasons that follow, the Government's motion to dismiss is DENIED and proceedings are stayed.

## I. BACKGROUND

### A. The Plaintiff's Allegations [1]

On April 3, 1996, in response to a petition filed by the Coalition for the Preservation of American Brake Drum and Rotor Aftermarket Manufacturers, a group comprised of U.S. manufacturers of brake rotors, the United States Department of Commerce ("Commerce") initiated an antidumping investigation. The purpose of this investigation was to determine if certain producers of brake rotors from the People's Republic of China were selling their products in the United States at less than fair value—a practice referred to as dumping—in violation of the Tariff Act of 1930. Compl. ¶¶ 6–7. As a result of the investigation, Commerce issued an antidumping duty order, which placed a 43.32% dumping duty on imports of brake rotors produced by certain Chinese companies. Compl. ¶ 11; *see also* Notice of Antidumping Duty Order, 62 Fed.Reg. 18,740 (April 17, 1997). Companies represented by the plaintiff were not subject to the dumping duty. Compl. ¶ 10.

In April or May of 1999, the plaintiff learned that certain Chinese manufacturers and exporters of brake rotors subject to the Antidumping Duty Order were fraudulently declaring that brake rotor shipments to the United States were products of the plaintiff's clients, CAIEC and Laizhao CAPCO. Compl. ¶ 13. Because of these fraudulent declarations, the Chinese manufacturers and exporters were able to import the brake rotors into the United States without paying the applicable antidumping duty. *Id.* After learning of this scheme, the plaintiff proposed to its clients that they implement a coding system whereby legitimate imports of brake rotors from CAIEC and Laizhao CAPCO could be distinguished from fraudulent imports made by Chinese producers subject to the antidumping duty. Compl. ¶ 14. White & Case also discussed the coding system with the United States Customs Service, now known as the Bureau of Customs and Border Protection ("Customs"). Compl. ¶ 15. Customs advised the plaintiff that if plaintiff and its clients would implement the

coding system, Customs would so inform the appropriate officials at United States ports of entry, enabling Customs to identify and seize fraudulent shipments of brake rotors. *Id.* According to White & Case, before it contacted Customs, the agency was unaware of these fraudulent imports of brake rotors. Compl. ¶ 16.

After discussing the coding system with Customs, the plaintiff developed a coding system involving sequences of numbers and letters that would allow Customs to distinguish its clients' legitimate imports from fraudulent imports sent by other Chinese manufacturers and exporters. Compl. ¶ 17. On June 1, 1999, White & Case provided Customs with a written description of the illegal importation scheme employed by certain Chinese manufacturers and exporters of brake rotors and a detailed description of the coding system that the plaintiff developed for detecting fraudulent brake rotor imports. Compl. ¶ 18. Customs circulated the information regarding plaintiff's coding system to Customs officials at United States ports of entry. Compl. ¶ 19. In addition to the coding system, the plaintiff alleges that between June 1, 1999, and January 3, 2000, it supplied Customs, on ninety-eight separate occasions, with original information regarding the illegal importation of brake rotors by certain Chinese manufacturers and exporters. Compl. ¶ 20. Further, the plaintiff claims that the provision of this original information directly led to a nationwide investigation into the fraudulent importation of brake rotors from China, which resulted in the recovery of fines, bond forfeitures, penalties, and unpaid duties. Compl. ¶ 21.

On January 4, 2000, and again on May 30, 2002, White & Case filed a claim for informant compensation with the Office of Investigations at Customs pursuant to 19 U.S.C. § 1619 and 19 C.F.R. § 161.16. Compl. ¶¶ 23–24. Plaintiff sought an informant's award of up to twenty-five percent of the net amount assessed and recovered by Customs. *Id.* Customs advised White & Case that it

---

1. On a motion to dismiss, the Court treats all of the complaint's well-pled factual allegations to be true, and draws all reasonable inferences from them in the light most favorable to the plaintiff.

*See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998).

had made no determination with respect to the latter's claim for informant compensation. Compl. ¶ 24. Thus, after twice filing a claim for informant's compensation and being informed, as recently as September 15, 2003, that Customs had made no determination regarding its claim, White & Case brought the matter to this Court, asserting ninety-nine counts for informant's compensation. Compl. ¶¶ 24–25. Specifically, the plaintiff seeks compensation for the ninety-eight specific instances in which it contacted Customs with invoicing information and a ninety-ninth count for recoveries that resulted from the coding system. White & Case also requests an accounting from the Government regarding all duties, bond forfeitures, and penalties assessed and recovered by the Government for the ninety-eight fraudulent invoices identified to Customs by the plaintiff. Compl. ¶¶ 25, 322–28.

## B. Procedural History

According to Customs, its investigation concerning the fraudulent importation of brake rotors is ongoing. Decl. of Todd J. Schneider; Decl. of Deborah J. Spero; Decl. of Michael J. Garcia.[2] As of October 4, 2004, only eleven of the ninety-eight instances where the plaintiff provided specific information to Customs had resulted in liquidated claims. Schneider Decl. at 2; *see also* Spero Decl. ¶ 13 (Customs "has not received all sums that may be owed to the government, or otherwise determined whether such sums cannot be recovered"); Garcia Decl. at 3 (Customs's "brake rotor investigation is expansive and currently covers 14 ICE [Immigration and Customs Enforcement] field investigative offices and one overseas attaché office").

In response to the plaintiff's complaint, the Government filed an answer, on April 8, 2004. It later filed a motion to dismiss under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted, on August 8, 2004. After the filing of the Government's answer but prior to the filing of its motion to dismiss, the parties in a June 3, 2004 joint preliminary status report proposed a schedule for discovery that was adopted by the Court on July 29, 2004. The Government moved for a stay of discovery on August 26, 2004, before White & Case was provided with what it considers meaningful discovery. The plaintiff opposed the Government's motion to stay discovery and filed a motion to compel further discovery. In the Government's reply to the plaintiff's opposition to the Government's motion to dismiss, the Government included the above-described Schneider declaration stating that only eleven of the plaintiff's claims had been liquidated—this declaration is apparently the most White & Case has been able to discover regarding its claims. In addition to the Schneider declaration the plaintiff has received privilege logs in response to the plaintiff's motion to compel. The plaintiff has received little if any discovery regarding the status of its moiety claims. Further discovery has been opposed by the Government on the grounds that it is protected by Executive privilege[3] and that discovery is not appropriate in this case.[4]

The Government has moved the Court to stay all discovery in this case until the Court has had the opportunity to rule on the Government's motion to dismiss. As a basis for dismissal, the Government asserts that the case should be dismissed for failure to exhaust administrative remedies and that plaintiff's claims are not ripe for this Court's review. In support of both of its grounds for dismissal that Government asserts that the case must be dismissed because White & Case has not waited to receive a final determination from Customs concerning its entitlement to a moiety before filing suit in this

---

**2.** Mr. Schneider's declaration was attached to the Government's reply supporting its motion to dismiss. The declarations of Deborah Spero, acting Deputy Commissioner of Customs, and Michael Garcia, Assistant Secretary for United States Immigration and Customs Enforcement, were attached to the Government's opposition to the plaintiff's motion to compel.

**3.** The Government has asserted the deliberative process privilege, continuing investigative files privilege, and privilege over any documents that pertain to confidential informants. *See* Def.'s Opp. to Pl.'s Mot. to Compel.

**4.** In addition to Executive privilege, the Government has asserted that discovery is not appropriate in this case because the Court's review is limited to administrative record review.

Court. Pursuant to the plaintiff's motion to consolidate hearing dates, the Court heard oral argument on the motions outstanding before the Court.

## II. DISCUSSION

### A. Jurisdiction

White & Case has identified 19 U.S.C. § 1619 as the money-mandating statute that provides the necessary basis for its claim under the Tucker Act, 28 U.S.C. § 1491. In general, subject to other jurisdictional concerns such as the statute of limitations, this Court has jurisdiction over claims brought under 19 U.S.C. § 1619. *See Doe v. United States,* 100 F.3d 1576, 1581 (Fed.Cir.1996). In order to invoke this Court's jurisdiction under the Tucker Act, a plaintiff must make its claim under a money-mandating statute; that is, a statute creating a "substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *see also Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) (plaintiffs must identify a "source of substantive law that creates the right to money damages"); *Contreras v. United States,* 64 Fed.Cl. 583, 588 (2005).

> Section 1619 provides that when:
>
> any person ... furnishes to ... any customs officer original information concerning (i) any fraud upon the customs revenue, or (ii) any violation of the customs laws or the navigation law which is being, or has been, perpetrated or contemplated by any other person; and such detection and seizure leads to a recovery of(A) any duties withheld, or (B) any fine, penalty, or forfeiture of property incurred; the Secretary may award and pay such person an amount that does not exceed 25 percent of the net amount so recovered.

19 U.S.C. § 1619 (2000); *see also* 19 C.F.R. § 161.12 (2004). Although on its face 19 U.S.C. § 1619 would appear to be discretionary and, therefore, not money-mandating, the Federal Circuit has determined that the word "may" as it is used in the statute "has long been understood to mandate the payment of an award." *Doe,* 100 F.3d at 1581; *see also Tyson v. United States,* 91 Ct.Cl. 139, 32 F.Supp. 135 (1940).

Thus, the Court has jurisdiction under the Tucker Act over the plaintiff's complaint. The Government's motion to dismiss may be read as to cast some doubt over this, as one of the grounds argued is ripeness, a doctrine with Article III "case or controversy" roots.[5] *See, e.g., Reno v. Catholic Social Services,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (noting "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction"). The Government does suggest that "White & Case is essentially requesting that this Court issue an advisory opinion." Def.'s Mot. at 10. But since the specific ripeness argument focuses on the lack of a "final agency action," *see id.,* which has been held to come within the *prudential* branch of Supreme Court ripeness jurisprudence in analogous situations, *see, e.g., Suitum v. Tahoe Regional Planning Agency,* 520 U.S. 725, 733–34, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997) (final decision requirement for a Takings claim is a matter of prudential ripeness), the Court concludes that subject matter jurisdiction is not an issue.

### B. Standard of Review

The dismissal of a complaint for failure to state a claim upon which relief can be granted is governed by RCFC 12(b)(6). The granting of a motion to dismiss for failure to state a claim "is appropriate when the facts asserted by the claimant do not entitle him to

---

**5.** Although this Court is established under Article I, it is, nonetheless, vested with the "judicial power," *Freytag v. Comm'r,* 501 U.S. 868, 889–90, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991), and "traditionally has applied the case or controversy requirement unless jurisdiction conferred by Congress demands otherwise." *Mass. Bay Transp. Auth. v. United States,* 21 Cl.Ct. 252, 257–58 (1990) (Rader, J.); *see, e.g., Commonwealth*

*Edison Co. v. United States,* 56 Fed.Cl. 652 (2003); *CW Gov't Travel v. United States,* 46 Fed.Cl. 554, 557–58 (2000); *Am. Maritime Transp., Inc. v. United States,* 18 Cl.Ct. 283, 290–91 (1989); *Kominers v. United States,* 3 Cl.Ct. 684, 685 (1983); *Welsh v. United States,* 2 Cl.Ct. 417, 420 (1983) (Mayer, J.); *Baskett v. United States,* 2 Cl.Ct. 356, 362 (1983).

a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed.Cir.2002). When considering a motion to dismiss under RCFC 12(b)(6) "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## C. Exhaustion of Administrative Remedies

The Government's first ground for dismissing the case is that the plaintiff has failed to exhaust administrative remedies. In support of its motion, the Government argues that "[b]y instituting this action, White & Case has failed to exhaust its administrative remedies because the claims it raises here have not yet been fully adjudicated and reviewed below." Def.'s Mot. at 8. The Government also asserts that "Customs's investigations relating to the information provided by White & Case are not yet complete, and, thus, a moiety determination cannot logically be made with regard to the value of the information provided." *Id.* Accordingly, the Government's position is that until the agency issues a decision concerning these claims, the plaintiff fails to state a claim in this Court.

■ The doctrine of exhaustion of administrative remedies provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). The federal courts currently apply two types of exhaustion doctrine: statutory exhaustion and prudential exhaustion. In deciding whether to require the exhaustion of administrative remedies, the Court must first look to the text of the statute itself: "[w]here Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (internal citations omitted). As the informer compensation statute, 19 U.S.C. § 1619, does not require the exhaustion of administrative remedies, this is a prudential exhaustion case. *See, e.g., Lewis v. United States*, 32 Fed.Cl. 59, 65 (1994) (holding that "[a]s is plain from its text, 19 U.S.C. § 1619 does not explicitly mandate the exhaustion of administrative remedies as a prerequisite to suit").[6]

The informant compensation statute, 19 U.S.C. § 1619, provides that the Secretary may pay an informer, who supplies original information, an award not to exceed twenty-five percent of the net amount recovered by Customs. 19 U.S.C. § 1619. In order to receive an award an informant is to file a claim with the Special Agent in Charge. 19 C.F.R. § 161.16. After the Special Agent in Charge receives the claim, the administrative process is as follows:

> the Special Agent in Charge ... shall make a recommendation on the form [submitted by the claimant] as to approval and the amount of the award. The Special Agent in Charge shall forward the form to the port director, who shall make a recommendation on the form as to approval and the amount of the award. The port director shall forward the form to Customs Headquarters for action. If for any reason a claim has not been transmitted by the port director, the claimant may apply directly to Customs Headquarters.

19 C.F.R. § 161.16. According to the Government, Customs has yet to complete this administrative process.[7] Thus, the question to

---

6. As prudential exhaustion is not jurisdictional, the Government has moved to dismiss the plaintiff's complaint under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted, rather than under RCFC 12(b)(1). *See* Tr. (Jan. 14, 2005) (hereinafter "Tr.") at 8.

7. To support this assertion the Government attached a declaration from Todd J. Schneider to its Reply. According to the Schneider declaration, the plaintiff's "moiety claim has not yet been forwarded to the Office of Rulings and Regulations, International Trade Compliance Division for our final review and potential approval." Decl. of Todd J. Schneider at 1. However,

be decided is whether the plaintiff should be forced to wait for the administrative process to be completed.

■ In a prudential exhaustion case, exhaustion of administrative remedies is often required where the "twin purposes of protecting administrative agency authority and promoting judicial efficiency" are served. *McCarthy,* 503 U.S. at 145, 112 S.Ct. 1081. The first of these purposes recognizes that agencies, by virtue of deference to Congress's delegation to coordinate branches of government, "not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *Id.; McKart v. United States,* 395 U.S. 185, 194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). "The agency, like a trial court, is created for the purpose of applying a statute in the first instance." *McKart,* 395 U.S. at 193–194, 89 S.Ct. 1657. Accordingly, agencies should generally be allowed the opportunity to develop the necessary factual background on which the decision will be based, exercise any discretion given in the statute, and apply agency expertise. *Id.* at 194, 89 S.Ct. 1657. Moreover, exhaustion of administrative remedies should be required "when frequent and deliberate flouting of administrative processes could weaken an agency's effectiveness by encouraging disregard of its procedures." *McCarthy,* 503 U.S. at 145, 112 S.Ct. 1081 (internal quotations omitted).

The second of the purposes, promotion of judicial efficiency, is served in at least two ways by requiring exhaustion. First, the requirement that a plaintiff pursue administrative remedies may prevent the courts from ever having to intervene, as the plaintiff may be able to gain the relief he seeks through the administrative process. *McKart,* 395 U.S. at 195, 89 S.Ct. 1657. Second, even if the plaintiff is not satisfied with the result received through administrative review, the requirement that the plaintiff exhaust his administrative remedies may produce an agency record that is useful for subsequent court review. *McCarthy,* 503 U.S. at 145, 112 S.Ct. 1081; *Weinberger v.*

*Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (exhaustion may allow an agency "to compile a record which is adequate for review").

■ Despite the institutional interests of the agencies and the courts, however, prudential exhaustion doctrine acknowledges that "[a]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interest in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *McCarthy,* 503 U.S. at 146, 112 S.Ct. 1081 (quoting *West v. Bergland,* 611 F.2d 710, 715 (8th Cir.1979)). Accordingly, prudential exhaustion recognizes three broad circumstances that weigh against requiring a plaintiff to exhaust his administrative remedies prior to bringing his case in court. First, the Court may not require exhaustion of administrative remedies when exhaustion may prejudice the plaintiff. *McCarthy,* 503 U.S. at 146–47, 112 S.Ct. 1081. For example, prejudice to the plaintiff may be the result of "an unreasonable or indefinite timeframe for administrative action." *Id.* at 147, 112 S.Ct. 1081; *see Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 587, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989) ("Because the Bank Board's regulations do not place a reasonable time limit on FSLIC's consideration of claims, Coit cannot be required to exhaust those procedures"); *Walker v. Southern R. Co.,* 385 U.S. 196, 198, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966) (possible delay of 10 years in administrative proceedings makes exhaustion unnecessary); *Smith v. Illinois Bell Telephone Co.,* 270 U.S. 587, 591–92, 46 S.Ct. 408, 70 L.Ed. 747 (1926) (claimant "is not required indefinitely to await a decision of the rate-making tribunal before applying to a federal court for equitable relief"). Second, the balance may weigh in favor of the plaintiff where an administrative remedy may be inadequate "because of some doubt as to whether the agency was empowered to grant effective relief." *Gib-*

as this is a motion to dismiss under RCFC 12(b)(6) the Court will not go outside the pleadings and consider this declaration. But even

were the Schneider declaration to be accurate, the Court's conclusion would not be affected.

*son v. Berryhill,* 411 U.S. 564, 575 n. 14, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Third, the administrative remedy may be inadequate where it can be shown that the administrative body is prejudiced or has otherwise predetermined the issue before it. *McCarthy,* 503 U.S. at 148, 112 S.Ct. 1081. Of these three circumstances that weigh against requiring exhaustion, the first, prejudice to the plaintiff, is at issue in this case.

■ White & Case alleges that the indefinite delay that it has already suffered and will continue to suffer if it is required to exhaust administrative remedies will be to its prejudice. Pl.'s Opp'n. at 9. The Court concurs with plaintiff's assessment. As the Court stated in *Lewis,* which also dealt with exhaustion of administrative remedies under 19 U.S.C. § 1619, "plaintiff could not be expected to wait indefinitely for a decision from Customs." 32 Fed.Cl. at 65. Here, White & Case has asserted that the longer it must wait for a determination from Customs, the more difficult it will be to prove its case. Pl.'s Opp. 9. For example, plaintiff has stated that it is "aware that key percipient witnesses both at [White & Case] and at [Customs] are no longer employed by the parties to this litigation." *Id.* In *Lewis,* the Court held that administrative remedies had been exhausted even though the plaintiff had filed his case in this Court just three weeks after filing his administrative claim with Customs, 32 Fed.Cl. at 65;[8] in the instant case, the plaintiff has waited over five years for a determination.

Therefore, the Court finds that the prejudice the plaintiff will suffer if it is required to exhaust administrative remedies outweighs any institutional interest on the part of Customs that would be served by dismissing the plaintiff's complaint. While the Court is sympathetic to the Government's concern that acceptance of the plaintiff's position "would inevitably lead to informants dictating the pace and cadence of DHS's multiple and vital investigations," Def.'s Reply at 9, where, as here, the plaintiff has waited over five years for a decision from Customs and there is no administrative procedure the plaintiff can follow to force Customs to act,[9] the Court is confident that any adverse effects of allowing the case to move forward will be minimal and, moreover, can be lessened by first giving the agency the opportunity to issue a decision on the matter.

Thus, although the Court finds that plaintiff will be prejudiced if forced to exhaust administrative remedies, because of the problems inherent in the review of an agency action without a final agency determination, the Court will follow the approach taken in *Lewis* and stay proceedings for a short time to give the agency the opportunity to make the necessary factual determinations. *See Lewis,* 32 Fed.Cl. at 65. Given the amount of time that has already elapsed since the moiety claims were filed, the Court will stay matters for three months from the date of this order (as opposed to the six months allowed in *Lewis*). If Customs fails to make a determination within this period, the money-mandating nature of 19 U.S.C. § 1619 will force the Court to determine whether the plaintiff is entitled to a moiety.

**D. Ripeness**

Directly related to the Government's argument that the case should be dismissed, for failure to exhaust administrative remedies, is the Government's argument that the plaintiff has failed to state a claim that is ripe for this Court's review. As was noted above, the

---

8. The Court stated in *Lewis,*

[w]hile three weeks does appear to be an inadequate amount of time to exhaust one's administrative remedies, there is no standard that can be applied to determine how much time must pass before a plaintiff can assume that his Customs claim has been denied. Indeed, the relevant Customs regulations concerning claims for awards of compensation for informers never address this important issue.

32 Fed.Cl. at 65.

9. The Customs administrative procedures have no set time frame. At oral argument when faced with the question of what the plaintiff could do if Customs waited, for instance, thirty-five years to make a determination, the Government confirmed that there would be no administrative remedy. Tr. at 12. The only assurance the Government could give the Court was that it was in Customs's best interest to make moiety awards to informants so that informants would continue to provide information. *Id.*

doctrine of ripeness stems in part from the case or controversy requirement of Article III of the United States Constitution, *see Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937), and in part from the recognition that "[p]roblems of prematurity and abstractness may well present 'insuperable obstacles' to the exercise of the Court's jurisdiction, even though that jurisdiction is technically present." *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588, 92 S.Ct. 1716, 32 L.Ed.2d 317 (1972). The ripeness doctrine prevents courts from deciding hypothetical, abstract. or contingent claims. *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). As the Supreme Court has stated:

> its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

This case, in essence, presents two ripeness challenges. The first challenge concerns the extent to which Customs has made recoveries based on the original information the plaintiff allegedly provided Customs. The Government asserts that until Customs has fully liquidated each alleged violation listed in the Complaint, the plaintiff's case is not ripe. Def.'s Mot. at 11; Def.'s Reply at 7–8. The second ripeness burden relates to the fact that the agency has not issued a final agency decision. In regard to final agency action, the Government argues that the plaintiff's claims will not be ripe for review until Customs has made a final agency determination as to whether the plaintiff is entitled to a moiety, Def.'s Mot. at 9–10—an argument almost identical to their exhaustion of administrative remedies argument.

■ In order to determine whether a claim is ripe for review "a twofold inquiry must be made: first to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief to the parties is denied at that stage." *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 162, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Abbott Labs.*, 387 U.S. at 149, 87 S.Ct. 1507. These two prongs are typically referred to as fitness and hardship. Generally, a case is fit for review where the issues to be considered are purely legal ones, and thus the Court could not "benefit from further factual development of the issues" and the court does not risk inappropriate "interfere[nce] with further administrative action." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). The hardship prong is met where "there is sufficient risk of suffering immediate hardship to warrant prompt adjudication—that is, whether withholding judicial decision would work undue hardship on the parties." *Cedars–Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1580–81 (Fed.Cir.1993). In order for a case to be ripe both prongs must be satisfied. *Abbott Labs.*, 387 U.S. 136, 149, 87 S.Ct. 1507 (ripeness is a twofold inquiry "requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration"); *Cedars–Sinai*, 11 F.3d at 1580–81 ("Both prongs must be satisfied before [a] court may apply its adjudicative powers to a case's merits.").[10]

■ For a moiety claim to be ripe, at the very least, the duties, fines, penalties, or forfeitures must have been liquidated by Customs. A moiety claim seemingly has three elements: 1) the provision of original information; 2) a violation of the customs laws or revenue; and 3) a recovery based on the information provided. *See* 19 U.S.C. § 1619; *Doe*, 100 F.3d at 1582 (the statute requires payment of "some award" to informants "who have provided original information involving violation of the customs or

---

10. If a party is able to satisfy the fitness prong, however, and "Congress has emphatically declared a preference for immediate review ... no purpose is served by proceeding to the second prong." *NRDC v. EPA*, 22 F.3d 1125, 1133 (D.C.Cir.1994) (citing *National Recycling Coalition, Inc. v. Reilly*, 884 F.2d 1431, 1434 (D.C.Cir. 1989)).

navigation laws that has led to the recovery of a fine, penalty, or property"). Informants are entitled to up to "25 percent of the net amount so recovered"; accordingly, if no net amount has been recovered, a claim cannot possibly be ripe. Essentially, if a recovery has yet to be made, White & Case would be asking the Court to issue a ruling based on the possibility that at some time in the future Customs will make recoveries based on the information White & Case provided. The only result of such a determination would be either a declaratory judgment or an advisory opinion; therefore, for a moiety claim to be ripe Customs must have made recoveries on the information provided.

 Motions to dismiss pursuant to RCFC 12(b)(6) are considered based on the allegations made in the pleadings. The plaintiff has alleged that it provided Customs with original information, regarding violations of the customs laws or revenue, and that the information has led to recoveries. Compl. ¶¶ 20–22. The Government, of course, counters that the investigation is on-going, that the information provided relates to the same case, and that of the ninety-eight counts pleaded in the Complaint only eleven have been liquidated. As will be discussed further below, the Court does not have enough information before it to determine whether the plaintiff has one case subject to the $250,000 statutory cap, or multiple cases, each individually subject to the cap. As to the Government's other two contentions, the Court will examine the ongoing nature of the investigation in terms of the fitness and hardship prongs of the ripeness analysis; however, the Court may not properly, as this is a RCFC 12(b)(6) motion, take into consideration the averments made by Mr. Schneid-

er in his declaration.[11] Accordingly, the Court will construe in White & Case's favor the allegation that recoveries have been made.

Assuming that recoveries have been made on the information White & Case provided Customs, the remaining two questions are whether the information was original and the size of the informant's award. The Federal Circuit has held that questions such as the first can be decided by this Court. *Doe,* 100 F.3d at 1583. As the circuit stated in *Doe,*

most of the potential challenges to an award determination—whether information provided by claimant was original, whether it led to a seizure, whether proper procedures were followed in deciding the claim—will involve straightforward statutory application and record review of fact-finding, complicated only perhaps by ac-commodating confidentiality concerns surrounding the relevant evidence.

*Id;* see also *Tyson,* 91 Ct.Cl. at 143–44, 32 F.Supp. 135.[12] Moreover, to the extent that the claims have been liquidated, a moiety determination does not involve the uncertain or contingent events of recoveries that may not occur. Therefore, if the plaintiff were able to demonstrate that some or all of its "cases"—assuming the plaintiff has more than one "case"—were fully liquidated, the Court finds the liquidated claims would be fit for this Court's review.

The second question, concerning the size of an award, is assuredly more problematic. As the Federal Circuit put it, "Congress and this court have recognized that the Government has broad discretion to determine the proper amount of an award in order to fashion appropriate incentives for informants to

---

11. The Court could convert the Government's RCFC 12(b)(6) motion into one for summary judgment and allow the plaintiff further discovery; however, the Court believes the more prudent route is to rule on the motion in terms of RCFC 12(b)(6) and stay the case to give Customs the opportunity to act on the applications. A resulting administrative record may render discovery irrelevant.

12. In *Tyson,* the Court of Claims determined that while Congress conferred on the Secretary the jurisdiction to determine facts related to a moiety claim,

If the Secretary's determination against the claim was supported by no evidence, if it was arbitrary or capricious, or if the proceedings were fatally defective, because, for instance, no opportunity for a hearing had been given the plaintiff, we think a suit would lie in this court to review his determination and to recover the award; but, on the other hand, if there was any evidence to support his finding, and if the proceedings were regular, his findings would be final and conclusive.

*Tyson,* 91 Ct.Cl. at 143–44, 32 F.Supp. 135.

cooperate." *Doe*, 100 F.3d at 1583; *see also Lewis*, 32 Fed.Cl. at 63. Informants who meet the factual conditions predicate (original information, customs fraud or violation, basis for recovery) are entitled to an award of *some* size, but discretion is given to Customs to adopt an appropriate policy to further the goals of the statute. This policy, of course, cannot be developed in an ad hoc manner, but must be the result of a reasoned determination, made sufficiently public. If such a policy is not known by the general public, it could not possibly provide an incentive for cooperation. If such a policy has been adopted, in the absence of an agency decision, it can still be applied by this Court. If no such policy exists, then the Court will follow the twenty-five percent figure in the statute.

As the claims presented are fit for review, the Court's remaining inquiry is whether withholding review of the plaintiff's claims would be an undue hardship on the plaintiff. The hardship that White & Case would suffer if liquidated claims are considered unripe is clear: the plaintiff will have to continue to suffer a delay of an indefinite duration while Customs determines whether to award a moiety. Plaintiff filed its first claim for a moiety on January 4, 2000; its second was filed on May 30, 2002. Compl. ¶¶ 23–24. Neither 19 U.S.C § 1619 nor 19 C.F.R. § 161.16 prescribe a time frame for Customs to decide whether to award a moiety. Given the length of time that the plaintiff has already waited—over five and one-half years—and the indefinite nature of Customs moiety determination process, if the plaintiff has fully liquidated claims that await a Customs moiety determination, the Court finds that any such case would be ripe for this Court's review.

**E. Number of "Cases" Asserted**

An issue that arose during oral argument, but was at best implicit in the briefing, is whether the plaintiff has asserted one "case" for informant's compensation or ninety-nine separate cases. Section 1619 provides that the "amount awarded and paid to any person under this section may not exceed $250,000 for *any case*," 19 U.S.C. § 1619(c) (emphasis added). The implementing regulation, 19 C.F.R. § 161.16, states that the "amount of the award paid to informants shall not exceed $250,000 for *any one case*, regardless of the number of recoveries that result from the information furnished." 19 C.F.R. § 161.16(a) (emphasis added). The plaintiff asserts ninety-eight specific counts of providing original information that led to recoveries and a ninety-ninth count of providing Customs with a coding system that led to multiple recoveries. *See* Compl. ¶¶ 23, 26. Further, the plaintiff asserts that each of these counts constitutes a separate case. Tr. at 50. On the other hand, the Government stated during oral argument that its position is that the plaintiff has one case. Tr. at 37–38.

As the parties have not briefed this issue, and in light of the Court's decision to stay proceedings, now is not the time to determine the number of "cases" brought by White & Case for section 1619(c) purposes. The Court will touch on the issue briefly, to help Customs to understand what the Court hopes will occur during the stay period.

The only reported case to have dealt with the issue in detail was *Cornman v. United States*, 187 Ct.Cl. 486, 409 F.2d 230 (1969).[13] In *Cornman*, the Court of Claims, in an opinion written by retired Justice Stanley Reed, held that an informer who gave Customs original information regarding false invoicing practices of Japanese steel companies was limited by the words "in any case" to a recovery of $50,000 for the information he furnished.[14] 187 Ct.Cl. at 489, 409 F.2d 230. The Court adopted the interpretation urged

---

**13.** The Court of Claims made passing reference to the issue in *Lacy v. United States*, 221 Ct.Cl. 526, 607 F.2d 951 (1979), where it stated that "[b]y use of the term 'original,' Congress meant to preclude successive rewards from being doled out after an investigation had been initiated and thereby discourage informers from giving out information on a piecemeal basis." *Id.* at 530, 607 F.2d 951 (citation omitted).

**14.** When *Cornman* was decided the pertinent part of the statute read, "a compensation of 25 per centum of the net amount recovered, but not to exceed $50,000 in any case." 187 Ct.Cl. at 488, 409 F.2d 230.

by the Government, that "'case' ... referr[ed] to the service of furnishing original information." 187 Ct.Cl. at 493, 409 F.2d 230. The Court concluded that the Government had been following "a 1917 decision of the Comptroller of the Treasury dealing with a similar fact situation of original information leading to multiple recoveries from separate companies." *Id.* at 490, 409 F.2d 230.[15] Construing a predecessor to the moiety statute, this 1917 decision concluded that "the term 'in any case' has reference to the total payment for the service rendered, regardless of the number and value of the recoveries effected thereunder." *Id.* (quoting 24 Comp. Treas. 17 (1917)).

Because of the sketchy nature of the facts reported, the *Cornman* opinion provides little guidance to our Court as to how one would determine the breadth of "the service of furnishing original information." *Cornman*, 187 Ct.Cl. at 493, 409 F.2d 230. The opinion mentions that there were nineteen companies involved in the recoveries, of which three were "members of a parent-subsidiary control group." *Id.* But the facts that would be of crucial significance given the holding—facts concerning the nature of the service provided—are, at best, vague. The opinion recites:

> [P]laintiff disclosed detailed information about the false invoicing practices of several Japanese steel companies. Although there is nothing in the record to show the exact manner of invoicing employed by the companies or whether the same method was used uniformly throughout the industry, the practices all involved violation of the same statute, 19 U.S.C. § 1592.

*Id.* at 489, 409 F.2d 230.

But the Comptroller's decision upon which the Court of Claims relied sheds additional light on the subject. This decision addressed a "concrete case ... in which *the information given at one time by an informer* led to the institution of a number of actions against different firms and individuals and resulted in the recovery by compromise and fines of

more than $100,000." 24 Comp. Treas. at 18 (emphasis added); *see also* T.D. 37279, 33 Treas. Dec. 51 (1917) (Assistant Secretary of the Treasury quoting from the decision reported at 24 Comp. Treas. 17 and directing officials to follow that decision in making awards). The Comptroller reasoned that:

> The value of the service to the Government is just as great when the entire amount recovered as the result of the information is recovered in one action and from one individual as when recovered in numerous actions and from different individuals. That Congress in fixing the maximum compensation to be paid in any case had reference to the total payment to be made for the information furnished in any case, regardless of the number of actions or different recoveries that might arise as a result of such information, I think there can be no room for reasonable doubt.

24 Comp. Treas. at 18. On that basis, he concluded that the words "in any case" were in "reference to the information furnished, rather than to the recoveries growing out of such information." *Id.*

It appears, then, that the plaintiff in *Cornman* supplied original information on only one occasion, and thus was only entitled to one award of up to $50,000 per the then-existing limits. This conclusion is bolstered by the Court of Claims's discussion of one of the plaintiff's objections to the Government's interpretation of "case," that it would encourage the provision of information on a piece-meal basis to multiply the number of "cases" entitling one to payment of a moiety. The opinion recounts:

> As the Government points out, had plaintiff leaked his information on a piecemeal basis, the Treasury might well have ruled on plaintiff's second disclosure and demand for compensation that since plaintiff's information involved the same thing—false invoicing practices in violation of 19 U.S.C. § 1592—his information was no longer "original" after the first disclosure. Such

---

15. The Court of Claims gave "great weight" to the agency's interpretation of the moiety statute. *Cornman*, 187 Ct.Cl. at 492, 409 F.2d 230. But since the statute being interpreted is not one that is being *enforced* by the agency but rather one

that *places a duty* on the agency, it may well be the case that the principles behind deference are less prevalent or even absent in this situation. Deference appears to be inconsistent with the notion that the statute is money-mandating.

a disposition would not frustrate the operation of the statute, for the Government, after the routine instigation of independent investigations on the basis of the information initially furnished, *would in all probability discover the same violations* later reported.

*Cornman,* 187 Ct.Cl. at 494, 409 F.2d 230 (emphasis added).

White & Case alleges that it supplied original information on ninety-nine separate occasions, thus entitling it to an award of up to the current ceiling of $250,000 for each separate provision of original information. It also appears from the Complaint that the information concerning specific invoices was supplied on sixteen different days. The important question, then, is whether the separate provisions of information may be aggregated into one "case." While the Government asserts that it is treating the brake rotor investigations as one case, no formal determination has been cited. Since the number of "cases" raised by a filing is a matter of fact, an agency determination of this is subject to the same Court review as other determinations—the Court must decide if "it is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, procedurally defective, or unsupported by evidence in the record." *Doe,* 100 F.3d at 1583 (citing *Tyson,* 32 F.Supp. at 136–37).

In making this determination, the agency must, of course, follow any relevant regulations and policies it has adopted. If the agency makes the factual determination that the plaintiff's various acts of providing information should be aggregated into one case, the Court expects the accompanying analysis to explain precisely how Customs expected to discover all of the specific violations absent the specific provision of information relating to them. While it is certainly possible that the first piece of original information regarding false invoicing practices would have enabled Customs to follow a pattern of false invoicing practices in order to detect further illegal shipments, this must be factually supported, not merely hypothesized.

## III. CONCLUSION

For the foregoing reasons, the Government's motion to dismiss is **DENIED**. The case is **STAYED** for three months from the date of this opinion, in order that the Bureau of Customs and Border Protection may have the opportunity to determine White & Case's eligibility for an award and, if so, the amount of the award. The Court expects that this will include a determination as to the number of "cases" for which White & Case is eligible for an award. The Government shall file an administrative record with the Court on or before November 1, 2005, and the parties shall file a joint status report on or before November 4, 2005.

IT IS SO ORDERED.